## WILLIAM BUTLER vs. WILLIAM TUFTS.

The established rule is, that if a witness be discovered to be interested during any part of the trial, his testimony is to be disregarded, although there has been a previous unsuccessful attempt to exclude him by the party against whom he was called.

Where a party has attempted to exclude a witness, produced against him, by evidence of his interest from others, and has failed, the Judge may in his discretion permit him to examine such witness on the *voir dire;* but it is doubtful whether this may be claimed, as matter of right.

If a person sell goods to one, as his own, and afterwards sell the same goods to another, as his own, he is liable to both on the warranty implied; and in a conflict between them, both claiming under him, he may be a witness for either.

Where personal property was mortgaged to ensure the delivery of articles on a given day; and the articles were not delivered at the stipulated time, but were afterwards delivered and accepted; the lien created by the mortgage is thereby discharged.

EXCEPTIONS from the Court of Common Pleas.

The action was trover for a yoke of oxen, alleged to have been converted in *August* 1834. The plaintiff proved, that he was in possession of the cattle, and that they were taken by the defendant of whom they were demanded. The defendant then called *Robert Banks,* as a witness to prove the property of the oxen to be in him. The plaintiff insisted, that *Banks* was incompetent through interest, and offered to prove that fact by the declarations made by said *Bangs. Smith J.,* before whom the trial was had, ruled that the declarations of *Bangs* were inadmissible for that purpose. The plaintiff then inquired of witnesses, whether the defendant had ever said, that *Bangs* was interested, but the witnesses had heard nothing from him on the subject. The plaintiff then offered to examine *Bangs* on the *voire dire,* but the judge ruled, that as the plaintiff had called witnesses to prove said *Bangs'* interest, it was not competent to examine him on the *voir dire. Bangs* was examined in chief, and it appeared from his testimony, that he once owned the oxen and sold and and delivered them to the defendant in *February,* 1834; that the cattle were left by the defendant in the possession of *Bangs,* and that he, *Bangs,* was to deliver them to the defendant in *July* following. The amount paid for the oxen, by the defendant, was

$50,00. The delivery of the cattle by *Bangs* to the defendant was proved by other witnesses. It further appeared from the testimony of *Bangs*, that in *September*, 1833, he mortgaged and delivered the cattle to one *Chandler*, as security for the sum of $35,00, to be paid in two months ; that when that time was expired, *Chandler* agreed to wait two or three weeks longer for his pay. About that time the plaintiff applied to *Bangs* to purchase of him a potash frame, kettles, &c., and *Bangs* agreed that he should have them, *if he would* advance the sum of thirty-five dollars, to be paid to *Chandler* in discharge of his lien upon the oxen. The frame, &c., were to be appraised and the balance above $35,00 to be credited by the plaintiff to *Bangs* to be paid in goods out of his store. The bargain was made, and it was also verbally agreed, that *Bangs* should mortgage the oxen *to the plaintiff to* secure the delivery of the frame, &c. in the ensuing week. After the time for payment to *Chandler* had expired, the plaintiff sent the $35,00 to *Chandler*, who, having been previously informed by *Bangs*, that the plaintiff was to pay him, received the money and delivered the oxen to the plaintiff; understanding that they were to be held by the plaintiff as security for the delivery of the potash frames, &c. *Bangs*, and also his son, testified, that the potash frame, &c., were delivered according to agreement. A witness called by the plaintiff testified, that they were not delivered according to agreement, but were sent to the plaintiff's afterwards, and finally appraised in *May* following at $67,00, and that sum appropriated with *Bangs'* consent to the payment of other claims, and that the sum paid to *Chandler* was still due. There was much other evidence in the case tending to discredit, or to corroborate *Bangs*, as well as to shew in whom the property of the oxen was at the time of the commencement of the action. The character of it sufficiently appears in the instructions requested and given in the Court of Common Pleas, and in the opinion of the court.

The plaintiff contended, at the trial in the Court of Common Pleas :

1. " That *Bangs* was interested, and ought not to be received as a witness. The Judge permitted said *Bangs'* testimony to be

considered by the jury, and instructed them to give it such credit, as they thought it deserved."

2. " That if the potash frames and kettles were not delivered within the next week, as stated by *Bangs;* and as it appeared that *Bangs* had received his pay in goods for the same, and settled his account without any reference to said oxen, he thereby waived the substitution of said frame and kettles, as security for the $35,00, for which said oxen were mortgaged. But the Judge instructed the jury, that it was immaterial at what time the potash frame and kettles were delivered, provided they were satisfied from the evidence, that they were received from the plaintiff without objection, in discharge of his mortgage and lien upon said oxen, and the potash frames, &c., were delivered by said *Bangs* for that purpose; and he further instructed the jury, that the plaintiff's mortgage and lien upon said oxen being thus discharged, the right to them reverted to the said *Bangs*, and his sale to the defendant, in *February*, 1834, became valid, and was not defeated by *Bang's* settlement in *May* following with the plaintiff, and that the plaintiff could not legally appropriate said oxen to the payment of his debt against *Bangs*, without the consent of the owner."

. 3. " It was contended, that the plaintiff derived a title from *Joel Chandler*, as appeared by his deposition. But the Judge instructed the jury, that it did not appear by that deposition, that the plaintiff derived an absolute title to the oxen from *Chandler* but from all the evidence taken together, it appeared that the title or lien which he obtained, was derived from said *Bangs*."

4. " It was contended by the plaintiff, that the testimony of said *Bangs*, in relation to the substituting the frame and kettles for the oxen, was incorrect and not entitled to credit, but that so much of his testimony as was in favor of the plaintiff's right of action, or claim upon said oxen, might be credited by the jury. But the Judge instructed the jury, substantially, that if they believed the testimony of *Bangs*, the defendant was entitled to their verdict, that the case principally turned on the credit they should give to his testimony; that it was difficult to separate one part of his testimony from the other, and to say that this part should be believed, and the other rejected; that the title of the

defendant was proved by other testimony, than that of *Bangs;* and that if they rejected the testimony of *Bangs* altogether, they would then inquire, if they were satisfied from other evidence in the case, that the plaintiff had made out his title to the oxen, previous to the sale and delivery of them to the defendant, by said *Bangs,* and the evidence to that point was referred to; and upon the whole, the Judge instructed the jury to form their own opinion of the evidence and of the facts, and having satisfied themselves in that respect, to decide the case according to the principles of law, as above stated."

The jury returned a verdict for the defendant, and the plaintiff filed exceptions to the rulings and instructions of the Judge.

*Wells,* for the plaintiff, in support of the request made at the trial to examine the witness on the *voir dire,* said that it was a settled principle of law, that if during the trial a witness turns out to be interested, his testimony will be rejected, even after an unsuccessful attempt to prove the interest. *Schillinger* v. *Mc-Cann,* 6 *Greenl.* 364; *Stark. Ev. part* 2, 120, 154, *part* 4, 756; 8 *Serg. & R.* 444. If then the the testimony is to be thrown out of the case, if given, it would be much better to prevent the waste of time by an examination on the *voir dire.*

He also argued in support of the other positions taken for the plaintiff at the trial.

*F. Allen,* for the defendant, argued in support of the rulings and instructions of the Judge; and cited, *Commonwealth* v. *Waite,* 5 *Mass. R.* 261; *Vining* v. *Wooton, Coxe's R.* 127; *Stark. Ev.* 756, *note; Pierce* v. *Chase,* 8 *Mass. R.* 487; *Ware* v. *Ware,* 8 *Greenl.* 43, 59.

After a continuance, *nisi,* the opinion of the Court was drawn up by

WESTON C. J. — The rule now established is, that if a witness be discovered to be interested, during any part of the trial, his testimony is to be disregarded. 1 *Phillips,* 101. And in *Schillinger* v. *McCann,* 6 *Greenl.* 368, this rule was applied, notwithstanding there had been a previous attempt unsuccessfully made to exclude him, by the party against whom he was produced. The defendant, to whom *Bangs* had sold the yoke of oxen in

Butlar *v.* Tufts.

controversy, called him as a witness, not only to prove the title of his vendee, the defendant, but further to support it, by disproving the title of the plaintiff, which conflicted with his.

It was decided in the case of *Hale* v. *Smith*, 6 *Greenl.* 416, that the vendor of goods, who sells them as his own, being bound to warrant the title, is inadmissible as a witness for the vendee. But the interest of a witness may be extinguished by a release, or it may be balanced by an equal interest on the other side.   The plaintiff also claims to be the vendee of *Bangs*, by the transfer, by *Bangs'* consent, of the instrument of sale previously made by him to *Chandler*.  This being the ground, upon which the plaintiff founds his claim, it must, as against him, be taken to be true ; for if it is not, he fails altogether.   If a party sells goods to A. as his own, and afterwards sells the same goods to B. as his own, he is liable to both upon the warranty implied, and in a conflict between them, both claiming under him, he may be a witness for either, his interest being exactly balanced.

The plaintiff insists, that he was the owner of the oxen by a prior sale ; originally by way of pledge or mortgage, but long since forfeited.   The witness has since sold them to another.   If they are thereby lost to the plaintiff, the witness is liable to him for their value.   And if the plaintiff had prevailed, he would have been liable to the defendant for no greater amount.   We regard it therefore as a case where the interest is balanced, and the witness admissible.   As every inquiry was finally made, and as it appears that the plaintiff would have derived no advantage from an examination under the *voir dire*, it is unnecessary to decide, whether that ought to have been allowed or not.   We think the Judge might in his discretion have permitted it.   It may be more doubtful, whether it could be claimed as a matter of right.

It seems to us very clear, that if the oxen mortgaged or pledged to the plaintiff, only for the delivery to him of the potash frame and kettles, when these were delivered to his acceptance, his lien on the oxen was gone.   If the kettles and frame were not furnished at the precise time agreed, the plaintiff might waive that condition, and the jury have found, that they were received by him without objection, in discharge of his mortgage or lien upon the oxen.

With regard to the instructions requested, that the jury might believe what the witness had testified in favor of the plaintiff, and disbelieve what he testified making for the defendant, no doubt they might, if they were satisfied that he was capable of perjury, or of swearing falsely for the sake of the plaintiff; but we perceive nothing in the case, which would justify such an imputation as the request implies. Nor did the jury; for they gave credit to his testimony, upon which they were instructed the cause principally turned. The credit of the witness, and every other part of the case was very fairly left to the jury.

*Exceptions overruled.*